IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GOOD SHEPHERD HEALTH CARE SYSTEM,　　　　　　　　　　05-CV-1683-BR

　　　　Plaintiff,　　　　　　　　　　　　　　　　　　OPINION AND ORDER

v.

TRAVELERS CASUALTY AND SURETY COMPANY
OF AMERICA,

　　　　Defendant.

**LOUIS A. FERREIRA IV**
**SCOTT J. KAPLAN**
Stoel Rives, LLP
900 S.W. Fifth Avenue
Suite 2600
Portland, OR 97204
(503) 220-2480

　　　　Attorneys for Plaintiff

1 - OPINION AND ORDER

**CARI EHRLICH WATERS**
**DANIEL SHELDON HASSON**
**WILLIAM G. EARLE**
Davis Rothwell Earle & Xochihua, P.C.
1900 Wells Fargo Center
1300 S.W. Fifth Avenue
Portland, OR 97201
(503) 222-4422

**MICHAEL J. ROSEN**
**PATRICK W. CARLSON**
**PETER F. LOVATO, III**
Boundas Skarzynski Walsh & Black, LLC
200 East Randolph Drive, Suite 7200
Chicago, IL 60601
(312) 946-4200

          Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court on Plaintiff Good Shepherd Health Care System's Motion for Partial Summary Judgment (#20) and Defendant Travelers Casualty and Surety Company of America's Cross-Motion for Summary Judgment (#51). For the reasons that follow, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Cross-Motion.

## BACKGROUND

Plaintiff brought this action seeking reimbursement from Defendant for expenses incurred in defending itself against claims brought by Dr. David Abbott and Perry Crowder. The parties agreed to settlement as to Crowder's claim, and the Court

2 - OPINION AND ORDER

entered partial summary judgment in favor of Plaintiff on September 8, 2006. Although Plaintiff titled its pending Motion as one for "partial" summary judgment, only one issue remains in this matter: Whether Defendant is liable for expenses incurred by Plaintiff defending itself against Dr. Abbott's claim.

For purposes of these Motions, the facts are undisputed.

### I.   The Abbott Claim.

In the early 1990s, Dr. David Abbott was employed by a medical group that contracted with Plaintiff to supply doctors to work at Plaintiff's hospital facility located in Hermiston, Oregon. Dr. Abbott does not appear to have worked directly for Plaintiff, but, nevertheless, he worked at Plaintiff's facility as Emergency Room Medical Director. During that time, Plaintiff billed Medicare for emergency-room services performed by Dr. Abbott using his name and Medicare unique physician identification number (UPIN).

Dr. Abbott did not work at Plaintiff's facility after 1997. Between 1998 and 2000, however, Plaintiff continued to use Dr. Abbott's name and UPIN without his authorization or knowledge to bill Medicare for medical services that he did not perform. During this period, Plaintiff submitted thousands of these unauthorized bills.

A government investigation of Plaintiff's billing practices was launched after one of Plaintiff's employees reported the

abnormal billing activity to governmental authorities.  Although investigators did not accuse Dr. Abbott of violating the law and did not appear to suspect him of wrongdoing, Dr. Abbott asserted he had to retain an attorney to protect his personal interests.  Dr. Abbott also maintained the investigation subjected him to mental anguish.

On September 9, 2004, Dr. Abbott filed a complaint against Plaintiff (Abbott Claim) in which he brought claims for "identity theft" and violations of the Oregon Racketeer Influenced and Corrupt Organizations Act (ORICO), Or. Rev. Stat. § 166.715, *et seq*.  *See Abbott v. Good Shepherd Med. Ctr.*, No. 04-CV-1273-JO.  The court dismissed Dr. Abbott's ORICO claim for failure to state a claim.  His claim of "identity theft," however, was construed by the court as a claim for invasion of privacy, which is a recognized cause of action under Oregon law.  Thus, that claim withstood Plaintiff's motion to dismiss.  Dr. Abbott later agreed to settle this claim for $100,000.

**II.  The Policy and Its Exclusions.**

On August 1, 2002, Defendant issued Plaintiff an insurance policy that covered the period from August 2002 to August 2003.  The policy was renewed to cover August 2003 to August 2004 and renewed again to cover the relevant period at issue here, August 2004 to August 2005.  The policy provided coverage to Plaintiff for any losses resulting from certain events, including losses

from any claims filed against Plaintiff for committing a "Wrongful Act."

The Policy defines a "Wrongful Act" as:

> [A]ny actual or alleged act, error, omission, misstatement, misleading statement or breach of duty, including but not limited to any **Wrongful Employment Practice**, . . . by an **Insured Person** or by the **Insured Organization** in their respective capacities as such, including **Insured Persons** acting in such capacity on behalf of the **Insured Organization** for third parties[.]

Kaplan Decl., Ex. 1 at 17 (emphasis in original).

The Policy further defines a "Wrongful Employment Practice" in relevant part as:

> [A]ny of the following occurring in the course of and arising out of the claimant's employment, application for employment, or status as a director or trustee with the **Insured Organization**: . . . (15) employment-related invasion of privacy, . . . (18) employment-related infliction of emotional distress.

Kaplan Decl., Ex. 1 at 4 (emphasis in original).

When the Policy was renewed for the August 2004 to August 2005 period, the Policy was amended to include an exclusion provision titled "Regulatory Action Exclusion." This exclusion modified the "Definitions" section of the Policy by including a definition for a "Regulatory Action Wrongful Act." A "Regulatory Action Wrongful Act" is defined as:

> [A]ny actual or alleged act, error, omission, misstatement, misleading statement or breach

5 - OPINION AND ORDER

> of duty by any **Insured** in performing or failing to perform any billing (including calculation of payments under any managed care plan), procedure coding, or any submission of any claim, data, or report with respect to Medicare, Medicaid or any similar federal, state or local program[.]

Kaplan Decl., Ex. 1 at 24 (emphasis in original).  The amendment further modified the exclusions section of the Policy to exclude coverage for any claims against Plaintiff "based upon, arising out of or in any way related to, directly or indirectly any actual or alleged '**Regulatory Action Wrongful Act**'."  Kaplan Decl., Ex. 1 at 24 (emphasis in original).

Shortly after Dr. Abbott filed his complaint on September 9, 2004, Plaintiff tendered its defense against the Abbott Claim to Defendant.  Defendant, however, concluded the Abbott Claim was excluded from coverage and, therefore, declined to defend or to indemnify Plaintiff against the Abbott Claim.  On July 14, 2005, Plaintiff filed an action in Umatilla County Circuit Court against Defendant for breach of contract.

On November 4, 2005, Defendant removed the action to this Court on the ground of diversity jurisdiction.

Plaintiff filed its Motion for Partial Summary Judgment on April 27, 2006, in which it contends Defendant was required by the Policy to defend or to indemnify Plaintiff for expenses relating to the Abbott Claim.  Defendant filed its Cross-Motion for Summary Judgment on October 2, 2006, in which it asserts,

6 - OPINION AND ORDER

among other things, coverage for the Abbott Claim is excluded because the claim arose from Plaintiff's unauthorized billing practices. Defendant contends those billing practices constitute Regulatory Action Wrongful Acts under the Policy and, therefore, are excluded from coverage.

The Court heard oral argument on both Motions on January 8, 2007.

### STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence

7 - OPINION AND ORDER

as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

When deciding issues of state law, this Court must interpret and apply Oregon law as the Oregon Supreme Court would apply it. *See S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001). If no decision by the Oregon Supreme Court is available to guide the Court's interpretation, the Court must predict how the Oregon Supreme Court would decide the issue by using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. *Id.*

## DISCUSSION

Although the parties have raised a number of arguments, both Motions turn on whether Defendant was obligated under the Policy to defend or to indemnify Plaintiff or whether the Abbott Claim fell within an exclusion from coverage.

**I. Oregon Law Governing Insurance Policies Generally.**

When interpreting an insurance policy, the court must attempt to determine the intent of the parties. *North Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 24 (2001). If an insurance policy expressly defines a phrase, that definition is controlling.

8 - OPINION AND ORDER

*Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 650 (2006).

An insurer has the burden of proof to establish that a loss is excluded. *Stanford v. Am. Guar. Life Ins. Co.*, 280 Or. 525, 527 (1977). "[A]ny ambiguity in any exclusionary clause is strictly construed against the insurer." *Id.* *See also United Pac. Ins. v. Truck Ins. Exch.*, 273 Or. 283, 293 (1975). An insurance policy term is ambiguous only if two or more plausible interpretations of the term are "reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole." *Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or.*, 313 Or. 464, 470 (1992).

The phrase "arising out of" in an insurance policy is generally broader than the phrase "caused by." *See Oakridge Cmty. Ambulance Serv., Inc. v. United States Fid. and Guar. Co.*, 278 Or. 21, 24-25 (1977). *See also Jordan v. Lee*, 76 Or. App. 472, 475 (1986).

The duty of an insurer to defend an insured under an insurance policy is determined by two documents: the complaint and the insurance policy. *Ledford v. Gutoski*, 319 Or. 397, 399-400 (1994). The duty to indemnify is independent of the duty to defend and may be established by additional facts presented at trial. *Id.* at 403. In any case, "[i]n order for summary

judgment to be appropriate on the duty to indemnify, there must be no genuine issue of material fact, and the moving party must be entitled to judgment as a matter of law." *Id.*

**II. Whether the Abbott Claim Is Covered under the Policy.**

Plaintiff contends the Abbott Claim was covered under the Policy because the Policy expressly provided coverage for claims arising from "Wrongful Acts." As noted, the Policy defined Wrongful Acts to include "Wrongful Employment Practices," which, in turn, were defined as including employment-related invasions of privacy and employment-related inflictions of emotional distress. Because the Abbott Claim was based in part on Dr. Abbott's "identity theft" claim (which the court construed as a claim for invasion of privacy) and on Dr. Abbott's assertion that he suffered mental anguish, Plaintiff contends Defendant was required under the Policy to defend Plaintiff against the Abbott Claim or to indemnify Plaintiff for its expenses related to that Claim.

According to Defendant, however, the Abbott Claim was excluded from coverage because it arose from Plaintiff's unauthorized and wrongful billings to Medicare using Dr. Abbott's name and UPIN, which Defendant contends constituted a series of Regulatory Action Wrongful Acts. The Policy excludes coverage for claims arising out of or in any way related to any "Regulatory Action Wrongful Act," which, as noted, is defined as

10 - OPINION AND ORDER

any "act, error, omission, misstatement, misleading statement or breach of duty by any Insured in performing or failing to perform any billing . . . , or any submission of any claim, data, or report with respect to Medicare, Medicaid or any similar federal, state or local program." Thus, Defendant maintains it was not required to defend or to indemnify Plaintiff as to the Abbott Claim.

### A. Ambiguity in the Policy.

Plaintiff asserts the title of the exclusion, "Regulatory Action Exclusion," creates an ambiguity in the Policy when it is read in conjunction with the text of the exclusion. Plaintiff, therefore, urges the Court to find as a matter of law that the Regulatory Action Exclusion is ambiguous and, as a result, does not exclude the Abbott Claim from coverage.

According to Plaintiff, the Oregon Supreme Court has recognized the possibility that the title of an exclusion might create ambiguity in an insurance policy under some circumstances. *See Fleming v. United Serv. Auto. Ass'n*, 330 Or. 62, 65 n.1 (2000)(court noted a litigant raised the issue of ambiguity between the title and the text of an exclusion as an alternate argument that the court did not reach). Moreover, Plaintiff points out that a Michigan appellate court recently decided ambiguities in an exclusion header or title are construed against the insurer. *Scott v. Farmers Ins. Exch.*, 266 Mich. App. 557,

11 - OPINION AND ORDER

562 (2005)("[T]he heading creates a tenuous, but plausible, ambiguity that will likely be resolved against the drafter.").

As noted, to determine whether an ambiguity exists in an insurance policy, there must be at least two reasonable interpretations of the allegedly ambiguous provision that stand up to scrutiny after analyzing the term in light of its particular context in the policy and the broader context of the policy as a whole. *Hoffman Constr. Co. of Alaska*, 313 Or. at 470. Under the *Hoffman* analysis, Oregon courts frequently find policy provisions unambiguous because such analysis often clarifies the meaning of a policy term and makes alternate meanings unreasonable. *See id.* at 477 (policy term "amount recoverable" had only one reasonable interpretation). *See also Groshong v. Mut. of Enumclaw Ins. Co.*, 329 Or. 303, 314 (1999)(after examining phrase "other invasion of the right of private occupancy" in the context in which it appeared in a policy, the court determined the plaintiff's proffered interpretation of the term was no longer plausible).

Plaintiff contends the title "Regulatory Action Exclusion" implies an exclusion under that section is applicable only when adverse action is taken directly against the insured by a regulatory agency such as Medicare. If the definition of a Regulatory Action Wrongful Act excludes claims that do not involve a regulatory agency, Plaintiff asserts the exclusion is

12 - OPINION AND ORDER

ambiguous in light of the title of the section, and, therefore, that ambiguity should be construed against Defendant as the insurer. *See, e.g., Stanford*, 280 Or. at 527. Thus, even if the text of the Regulatory Action Exclusion excludes coverage of the Abbott Claim, Plaintiff maintains Defendant was obligated to defend and to indemnify Plaintiff because the ambiguity created by the section title in light of the text would render the entire exclusion inapplicable under the circumstances.

The ambiguity as alleged by Plaintiff, however, does not withstand the scrutiny required by *Hoffman*. For example, neither the text of the Regulatory Action Exclusion nor the section that defines an excluded "Regulatory Action Wrongful Act" mentions regulatory agencies. In fact, Regulatory Action Wrongful Acts do not appear to have anything to do with a regulatory agency or to require any action by an agency. Thus, Plaintiff's interpretation is not reasonable. *See Hoffman Constr. Co. of Alaska*, 313 Or. at 470. The Court, therefore, concludes there is not any ambiguity between the title "Regulatory Action Exclusion" and the text of the exclusion when the Policy is viewed as a whole.

**B.   Title of the Exclusion Provision.**

Even if the Regulatory Action Exclusion is not deemed to be ambiguous, Plaintiff contends the exclusion, as its title indicates, can only be triggered by the action of a regulatory

13 - OPINION AND ORDER

body.  In other words, Plaintiff argues the title "Regulatory Action Exclusion" controls even if the text of the exclusion excludes the Abbott Claim from coverage.  Because a regulatory body has not taken action, Plaintiff maintains the Abbott Claim, therefore, is not excluded from coverage.  As noted, however, the Policy and its exclusions do not specifically mention regulatory agencies.  The Court does not have the authority to insert terms into an existing insurance policy.  *See generally Morgan v. State Farm Life Ins. Co.*, 240 Or. 113, 117 (1965); *Farmers Ins. Co. of Or. v. Jeske*, 157 Or. App. 362, 368 (1998).  Thus, the Court concludes the title "Regulatory Action Exclusion" does not require action by a regulatory agency.

      **C.    Whether the Abbott Claim Arose Out Of "Regulatory Action Wrongful Acts" as Defined.**

The Regulatory Action Exclusion excludes coverage for any claim "arising out of" one or more Regulatory Action Wrongful Acts.  Plaintiff contends the Abbott Claim did not arise out of any Regulatory Action Wrongful Acts, but rather the claim merely arose out of acts only somewhat related to the subject matter of the Regulatory Action Exclusion.  In other words, Plaintiff asserts the causal relationship between the Abbott Claim and any Regulatory Action Wrongful Acts is too attenuated.

Oregon courts construe exclusionary provisions narrowly. *See United Pac. Ins. Co.*, 273 Or. at 293.  When applying Oregon

14 - OPINION AND ORDER

law, the Court must strictly interpret exclusions in an insurance policy.  *See Stanford*, 280 Or. at 527.  As noted, the Oregon Supreme Court has found the phrase "arising out of" in an insurance policy is broader than the phrase "caused by."  *See Oakridge Cmty. Ambulance Serv., Inc.*, 278 Or. 21, 24-25 (1977).  The Regulatory Action Exclusion excludes coverage from any claim arising out of an "act" or "error" performed by Plaintiff in connection with "any billing" or "any submission of any claim" to Medicare.  In addition, the Court notes the Abbott Claim would not have been filed if Plaintiff had not used Dr. Abbott's name and UPIN Medicare number to bill Medicare repeatedly without Dr. Abbott's knowledge or authorization for medical services that he did not perform.  Moreover, the record does not reflect any other event than Plaintiff's billings to Medicare as the basis for the Abbott Claim.  Thus, on this record, the Abbott Claim appears to have "arisen out of" conduct that was strikingly similar to the conduct contemplated by the Regulatory Action Exclusion.  Thus, the Court concludes the Abbott Claim arose out of a series of Regulatory Action Wrongful Acts by Plaintiff as defined under the Policy and, therefore, the Abbott Claim is excluded from coverage under the Policy by the Regulatory Action Exclusion.  Defendant, therefore, did not have a duty to defend Plaintiff against the Abbott Claim.  *See Ledford*, 319 Or. at 399-400.

   Although, as noted, the duty to indemnify is independent of

15 - OPINION AND ORDER

the duty to defend and might arise as a result of facts established at trial, Plaintiff has not established, and the record does not reflect, that a genuine issue of material fact exists as to Defendant's duty to indemnify.  Thus, the Court also concludes Defendant did not have a duty to indemnify Plaintiff as to the Abbott Claim.  *See id.* at 403.

Accordingly, the Court grants Defendant's Cross-Motion for Summary Judgment and denies Plaintiff's Motion for Partial Summary Judgment.

## **CONCLUSION**

For these reasons, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment (#20) and **GRANTS** Defendant's Cross-Motion for Summary Judgment (#51).

IT IS SO ORDERED.

DATED this 2nd day of February, 2007.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge